CATHARINE MURPHY, as Administratrix, &c., of John Murphy, Deceased, Respondent, *against* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

(Decided June 5th, 1882.)

Upon the trial of an action against a railroad company brought for alleged neglect of defendant causing the death of plaintiff's intestate, it appeared that deceased, while in the employment of defendant, and at work as a laborer upon the tracks in its yards, was struck and fatally injured by a car coming from behind him, without a brakeman upon it, and to which impetus had been given by a detached locomotive. It also appeared that this method of moving cars over these tracks, sometimes

with and sometimes without a brakeman upon them, was daily practiced by defendant; that deceased had been employed there for more than a month before he was injured; and that only a day or two before he had been warned of the danger by defendant's foreman, and urged by him to take care, under penalty of dismissal. *Held,* that a motion by defendant to dismiss the complaint should have been granted, as deceased had failed to exercise ordinary care for his own safety; also, that upon the facts disclosed, he must be charged with knowledge that the cars were moved in this way, and must be deemed to have assumed the risk incident thereto as one of the risks of his employment.

APPEAL from a judgment of this court entered upon the verdict of a jury, and from an order denying a motion for a new trial.

On the 21st of September, 1880, the intestate, John Murphy, was employed by the defendant as a track laborer. He did service for about one month on the tracks in defendant's yards between Tenth and Eleventh avenues and Thirtieth and Thirty-third streets in the City of New York. On the 23d of October, while so employed on the track, he was struck and killed by a car coming from behind him, running without a brakeman, to which impetus had been given by a detached locomotive. This method, called "kicking," had been pursued continuously for many years by the company in this locality, when cars were moved to make up trains or for other purposes. The intestate, a day or two prior to the accident, was told by his foreman that if he would not look out for himself, he would be discharged. Two days before, the foreman had pulled him out of the way of a train, and said "you must look out for yourself." The action was brought to recover damages resulting from his death. The jury found a verdict for the plaintiff. A motion by the defendant for a new trial upon the minutes was denied and judgment for the plaintiff was entered on the verdict. From the judgment and the order denying the motion for a new trial the defendant appealed.

*Frank Loomis* for appellant.

*E. Louis Lowe,* for respondent.

BEACH, J.—[After stating the facts as above.]—The principal questions on this appeal arise upon exceptions taken on behalf of the defendants to the charge of the court and to refusals to charge requests of defendants' counsel. I am not aware of any legal obligation resting upon the defendants to conduct their business in any special manner, or to refrain from pursuing any method deemed proper by them in the mode of its transaction, although they are bound to use ordinary care to avoid exposing servants to extraordinary risks which they could not reasonably anticipate. If one of their servants be injured, as in this case, from the way in which the business is done, even if not cautiously regulated, he or his representative is not from that fact alone entitled to recover. It may be admitted that pushing a car over the track unattended and uncontroled is neither careful nor prudent, but it does not necessarily follow that from so doing one in the defendants' employ, who may be injured by it, would be entitled to compensation. There is a corresponding duty to exercise ordinary care and prudence resting upon the servant, and, in addition, the question arises whether or not the happening was one of the risks of his employment. If this danger was one incident to the labor the intestate voluntarily assumed to do for the company, the latter should not be held liable. He was employed to work upon these tracks whereon cars were constantly passing with and without brakemen, and he was charged by the law with the exercise of ordinary care for his own safety. He could not, in the performance of his duty, disregard the dictates of common prudence and pursue his work on the track, as he did, with his back turned in a direction from whence a car might approach, and apparently without effort to protect himself from the dangers he must have known surrounded him. The proof shows him to have been warned by the foreman shortly before the accident, and urged under the penalty of dismissal to care for himself. In this view of the case, there being no conflict in the evidence, I think the defendants were entitled

to the nonsuit asked at the close of the proofs on the second ground.

The intestate must also be charged, from the facts disclosed, with the knowledge that cars were moved by "kicking." The habit was daily practiced, and the deceased had been employed upon the tracks over which they passed for a month. While it may have rested upon the defendants to show his knowledge of this mode of doing business, they were not bound to do so by proof of direct statement to the intestate. The undisputed facts were sufficient to charge him with the knowledge. It being so, he remained in the employ, possessed of the information, and voluntarily assumed the risks. Upon this branch of the case, it seems to me the learned court below was in error. The learned judge charged the jury, "If Murphy went in that employment understanding and knowing that the ordinary course of business was to shove cars from one place to another, without any brakeman on top, that was one of the risks of the business which he assumed, and he will be debarred from recovery. But if it was not the uniform course to shift those cars without any brakeman on top—if there were different ways of doing the thing—then I leave it to you to determine, as a matter of fact, whether he knowingly assumed the risk arising from the shifting of cars without any brakeman on the top of the car. If you think he assumed a risk of that kind, that is an answer to this action. If you think he did not assume that risk, then you would be justified in finding a verdict for the plaintiff." The first paragraph of this extract is a correct proposition ; the error lies in its qualification. It made no difference whether it was a uniform course of procedure or not, nor whether or not there were different ways of doing the thing. The intestate's knowledge of its being done either more or less was sufficient to relieve the defendant from legal liability ; leaving for the jury's determination, as matter of fact, whether he did or did not assume the risk, upon which to found a verdict, was submitting a question of law, instead of the fact of knowledge or ignorance, wherefrom the

assumption of the risk by the deceased would or would not result as matter of law.

If the foregoing views are correct there was error in refusing the defendants' request to charge the jury that if the deceased knew, or might or ought to have known, that it was customary to kick cars on the tracks without a brakeman on them he assumed the risk of all injuries incident to that manner of doing business. The ability to acquire knowledge by ordinary observation, as well as actual knowledge, would relieve the defendants from liability. If not, the master would be held responsible from ignorance self-imposed by the servant, by willfully disregarding the daily happenings surrounding his employment. If the deceased knew of this mode of moving cars, or should have known it, in the judgment of the jury, from what he himself did day after day, it was a risk which he assumed. In *Seymour* v. *Maddox* (16 Q. B. 326), a case where an actress, while passing off the stage, fell through an open trapdoor and was injured, COLERIDGE, J., said, when holding the proprietor under no obligation to keep such places lighted and guarded, " The real question is whether the duty arises from the relation in which the parties stood. It seems to me, if we were to hold that it did, the consequences would be that whenever the same relation existed we would have to infer duties that have never yet been held to exist. The servant is not bound to enter the master's service ; but if he does, and he finds things in a certain state, he must take the consequences, if any, that may occur owing to such a state of things."

The judgment and order should be reversed and a new trial ordered, with costs to abide the event.

VAN BRUNT, J., concurred.

Judgment and order reversed and new trial ordered, with costs to abide event.